UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HOFFMANN BROTHERS HEADTING AND AIR CONDITIONING, INC., | ) ) ) |
| Plaintiff/Counterclaim Defendant, | ) ) |
| v. | ) Case No. 4:19-cv-00200-SEP ) |
| THOMAS E. HOFFMANN and HOFFMANN AIR CONDITIONING & HEATING, LLC, | ) ) ) |
| Defendants/Counterclaimants | ) ) |
| v. | ) ) |
| HOFFMANN BROTHERS HEADTING AND AIR CONDITIONING, INC., ROBERT J. HOFFMANN, CHRIS HOFFMANN, AND ROBERT JOSEPH HOFFMANN, JR., | ) ) ) ) ) |
| Counterclaim Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Counterclaim Defendants Hoffmann Brothers Heating and Air Conditioning, Inc., Robert Hoffmann, Chris Hoffmann, and Robert Joseph Hoffmann, Jr.'s Renewed Motion to Dismiss Counts IV, V, VII, and VIII of Defendants' Counterclaims (Doc. [139]).  The motion is fully briefed. For the reasons set forth below, the motion is granted in part and denied in part.

### Relevant Facts and Background[1]

Prior to July 14, 2011, Tom Hoffmann ("Tom") and his brother Robert Hoffman ("Robert") owned and operated Hoffmann Brothers Heating and Air Conditioning, Inc.

---

[1] The facts contained herein are taken from the allegations set out in the Counterclaims.  They are assumed to be true for the purpose of this Memorandum and Order. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

1

("Hoffman Brothers") together. Doc. [59] ¶ 11. On July 14, 2011, the parties resolved a lawsuit between them by entering into a Settlement Agreement (the "Agreement"). *Id.* ¶ 13. Pursuant to the Agreement, Tom transferred his stock in Hoffmann Brothers to Robert and Robert's wife, in exchange for certain payments and other agreements. *Id.* ¶ 14. The Agreement contained a non-disparagement clause. *Id.* ¶ 16.

Despite the non-disparagement clause, Hoffmann Brothers has engaged in an organized scheme and campaign to harm the reputation of Tom and his new HVAC company, Hoffmann Air Conditioning & Heating, LLC (the "Company"). *Id.* ¶ 30. Robert (Hoffmann Brothers' CEO) and his sons Chris Hoffman ("Chris") and Robert Joseph Hoffmann, Jr., ("Joe") (both officers of Hoffmann Brothers) are primarily responsible for organizing and carrying out this scheme. *Id.* This scheme includes causing employees of Hoffmann Brothers, as well as associates and friends, to publicize false, defamatory, and misleading statements about Tom and the Company. *Id.* ¶ 31. These statements include:

1. December 2018 emails from Chris and Joe to their friends encouraging them to post false Google reviews containing defamatory and disparaging statements about Tom (the "Google Review Emails"), *id.* ¶ 32;

2. Disparaging, defamatory, and misleading ratings and reviews on Google (the "False Reviews"), *id.* ¶ 35;

3. A letter from Chris and Joe (the "Family Letter") to 20 members of Tom's family (the "Hoffman Family"), sent several days before Christmas, containing numerous misstatements, misrepresentations, and defamatory and disparaging statements about Tom and the Company, *id.* ¶¶ 37-43;

4. Negative comments about Tom and the Company made by Robert and Chris to family members at a lunch in December 2018 (the "Lunchtime Comments"), *id.* ¶ 47;

5. False accusations to municipal enforcement authorities directed at Tom and the Company, including false statements accusing Tom and the Company of engaging in purported code violations (the "Municipal Accusations"), *id.* ¶ 48;

6. Listing Tom's home address on Realtor.com and sending out inquiries under Tom's name on Realtor.com, prompting a flood of unwanted phone calls and emails (the "Home Postings"), *id.* ¶ 49;

7. Sending out inquiries under Tom's name for different vehicles on Autotrader.com, prompting unsolicited and unwanted calls (the "Car Postings"), *id.* ¶ 50; and

8. Sending out inquiries under Tom's name for life insurance quotes, prompting unsolicited and unwanted calls (the "Life Insurance Postings"), *id.* ¶ 51.

## Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in the non-movant's favor. *Neitzke,* 490 U.S. at 326-27.

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly,* the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); *accord Iqbal,* 556 U.S. at 678–79. Specifically, to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly,* 550 U.S. at 556.

## Discussion

Tom and the Company (collectively, the "Counterclaimants") bring nine counterclaims against combinations of Robert, Chris, Joe, and Hoffmann Brothers (collectively, the "Counterclaim Defendants"), including:

3

      1)  Declaratory Judgment under the Federal Lanham Act and State Law;

      2)  Breach of Contract;

      3)  Defamation;

      4)  False Light Invasion of Privacy;

      5)  Intentional Infliction of Emotional Distress;

      6)  Fraud;

      7)  Tortious Interference;

      8)  Civil Conspiracy; and

      9)  Prima Facie Tort (In the Alternative).

The Counterclaim Defendants have moved to dismiss Counts IV (False Light Invasion of Privacy), V (Intentional Infliction of Emotional Distress), VII (Tortious Interference), and VIII (Civil Conspiracy).  The Court will consider each count in turn.

**I.**    **Count IV (False Light Invasion of Privacy)**

Counterclaimants bring Count IV against all Counterclaim Defendants.  They allege that the Counterclaim Defendants placed Tom and the Company in a false light through the Google Review Emails, the False Reviews, the Family Letter, the Lunchtime Comments, the Municipal Accusations, and other unspecified slanderous comments (collectively, the "Defamatory Statements").  Doc. [59] ¶ 82.  Counterclaimants allege that the false light in which they were placed is highly offensive to a reasonable person; that the Counterclaim Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter; and that Tom's and the Company's reputations were damaged as a direct and proximate result of the Defamatory Statements, and the Company lost profits as a result.  *Id.* ¶¶ 83-85.

Counterclaim Defendants argue that the false light counterclaim should be dismissed as duplicative of the defamation counterclaim because it is based on "the **exact same** allegedly false statements of fact that form the basis of Defendants' defamation counterclaim." Doc. [140] at 3. In response, Counterclaimants contend that the false light claim does not duplicate the defamation claim because the theories of recovery are distinct, and the claims assert different injuries. Doc. [148] at 2. Counterclaimants point out that false light addresses "injury to [the] inner person," and defamation protects one's interest in his objective reputation in the world, citing *Sullivan v. Pulitzer Broad. Co.*, 709 S.W.2d 475, 479 (Mo. banc 1986). They argue that their defamation claim focuses on harms to their reputations, "specifically the false and misleading comments related to [Tom's] reputation in the business community," while the false light claim "seeks to protect [Tom's] interest in being left alone." [Doc. [148] at 3.

Further, Counterclaimants argue that "the trier of fact could conclude that a statement was not defamatory, but still placed Tom in a false and negative light." Doc. [148] at 4 (internal quotation and citation omitted). In other words, Counterclaimants argue that the false implications of statements' context, rather than individual defamatory statements, damaged Tom, distinguishing this false light claim from defamation.

The Court is not convinced by either of Counterclaimants' distinctions. Counterclaimants allege the same Defamatory Statements as the bases for both their defamation and false light claims. *See* Doc. [59] ¶¶ 74, 82. Further, Counterclaimants allege the same damages: reputational harm and lost profits. *Id.* ¶¶ 78, 85. On the counterclaims' face, then, the false light claim appears to duplicate the defamation claim.

A recent Missouri Supreme Court case has foreclosed Counterclaimants' second line of argument. The Missouri Supreme Court "has refused to recognize false light invasion of privacy

5

claims when the claim 'is nothing more than the classic defamation action where one party alleges that the other published a false accusation concerning a statement of fact.'" *Smith v. Humane Soc'y of U.S.*, 519 S.W.3d 789, 803 (Mo. banc 2017) (quoting *Sullivan*, 709 S.W.2d at 480-81). There, the plaintiff contended that her false light claim did not replicate her defamation claim because her false light claim was "based on the *false implications* of the context of the [allegedly defamatory statements], *not particular false statements*." *Id.* (emphasis added). The plaintiff argued that even if the factual statements made about her business were accurate, the misleading context put her "before the public in a false position." *Id.*

The court rejected that argument, holding that statements "imply a false assertion of fact if they are either incorrect *or* incomplete, *or* if the assessment of them is erroneous." *Id.* at 804 (internal quotation marks, citation, and alteration omitted) (emphasis in original). The court reasoned that the plaintiff alleged that the statements made against her concerned "erroneous assessments of statements of fact," and accordingly, she should have sought recovery for them via a defamation claim. *Id.* Counterclaimants' argument is substantially the same as that rejected by the Missouri Supreme Court in *Smith*.

Counterclaimants' false light claim is duplicative of their defamation claim, and accordingly, Counterclaim Defendants' Count IV will be dismissed.

## II.    Count V (Intentional Infliction of Emotional Distress)

Counterclaimants bring Count V against all Counterclaim Defendants. They allege that the Counterclaim Defendants engaged in extreme and outrageous conduct by: (1) sending the Family Letter shortly before Christmas; (2) making the Lunchtime Comments; (3) making the Municipal Accusations; and (4) making the Home Postings, Car Postings, and Life Insurance Postings. Doc. [59] ¶ 89. The Counterclaimants allege that this conduct went "beyond all

possible bounds of decency"; that it was intended only to cause extreme emotional distress to Tom; and that Tom suffered mental anguish and reputational harm as a direct and proximate result of Counterclaim Defendants' conduct. *Id.* ¶¶ 91-93.

Counterclaim Defendants argue the first three examples of their alleged conduct are the bases of Counterclaimants' defamation (*id.* ¶ 74), false light (*id.* ¶ 82), and tortious interference claims (*id.* ¶ 117), and that the IIED claim is duplicative of those three counts because the same actions form the bases of those claims. Further, they argue that the online postings were not sufficiently extreme or outrageous to make out an IIED claim. Doc. [140] at 3-4.

In response, Counterclaimants contend that Missouri law prohibits an IIED claim only when it "consists *only* of a defamation," citing *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. 1993) (emphasis in original), and they have alleged conduct apart from defamation—specifically, the online postings and the context of having sent the Family Letter shortly before the family gathered for Christmas—so the IIED count is not duplicative. Doc. [148] at 3-4.

To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm. *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. banc 1996). The conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Warrem v. Parrish*, 436 S.W.2d 670, 673 (Mo. 1969). The conduct must be "intended only to cause extreme emotional distress to the victim." *K.G.*, 918 S.W.2d at 799. "Missouri case law reveals very few factual scenarios sufficient to support a claim for intentional infliction of emotional distress." *Gillis v. Principia Corp.*, 832 F.3d 865, 875 (8th Cir. 2016) (quotation omitted).

7

When a defendant's conduct is intended to invade other legally protected interests of the plaintiff, however, the recovery for emotional distress, as an independent tort, is duplicative. *Nazeri*, 860 S.W.2d at 316. Missouri courts have held that where one's conduct amounts to the commission of a traditional tort and was not intended only to cause extreme emotional distress to the victim, the tort of intentional infliction of emotional distress will not lie, and recovery must be had under the appropriate traditional tort action. *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 322 (Mo. Ct. App. 2010).

The facts alleged by Counterclaimants support claims for defamation and tortious interference (discussed *infra*). In other words, the alleged actions underlying the IIED claim were "intended to invade other legally protected interests" of Counterclaimants. *Id.* Accordingly, none of those actions will support an independent claim for IIED.

Counterclaimants argue that the timing of the Family Letter, as well as the online impersonations, were wanton and outrageous acts that justify an IIED claim. They cite *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 594 (S.D.N.Y. 2018), to argue that this conduct reaches the level required for IIED. In that case, the court noted that creating "impersonating profiles" on the internet may be "sufficiently extreme and outrageous" to justify an IIED claim. *Id.* However, that case is easily distinguished from this one: There, the impersonating profiles were "fake profiles to Grindr, which describe Herrick as being interested in fetishistic sex, bondage, role playing, and rape fantasies and which encourage potential suitors to go to Herrick's home or workplace for sex." *Id.* at 584. The impersonation alleged by Counterclaimants bears no resemblance to the impersonation in *Herrick*.

A more analogous case is *Bittman v. Fox*, 107 F. Supp. 3d 896 (N.D. Ill. 2015). There, the plaintiff alleged IIED where the defendants allegedly made defamatory internet posts,

published photos of the plaintiff's house on the internet to harass and intimidate her, and created a social media page to "impersonate and defame" the plaintiff's business. *Id.* at 904-905. The court found that the defendants' conduct, while "distasteful, mean-spirited, and vindictive," did not constitute sufficiently extreme and outrageous conduct. *Id.* at 905. "The standard for an IIED claim is high, and under no circumstances do mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities qualify as outrageous conduct." *Id.* (internal quotation and alteration omitted). As a matter of law, the conduct alleged by Counterclaimants fails to rise to the level of atrocity and intolerability necessary for an IIED claim.

Further, while Counterclaimants allege that Counterclaim Defendants' alleged misconduct "was intended only to cause extreme emotional distress to Tom," Doc. [59] ¶ 92, that allegation is belied elsewhere in the Counterclaims. For example, in Count IX for Prima Facie Tort (in the alternative), Counterclaimants allege that the same conduct "was intentionally undertaken solely for the purpose to [sic] injure Tom and the Company by harming their reputations, business interests, and causing Tom emotional harm." *Id.* ¶ 134. "Courts need not accept as true factual assertions that are contradicted by the complaint itself[.]" *Williams v. First Nat. Bank of St. Louis*, No. 4:14-cv-01458-ERW, 2014 WL 5800199, at *4 (E.D. Mo. Nov. 7, 2014) (internal quotation omitted). Therefore, Counterclaimants do not sufficiently plead this element of their IIED claim.

Accordingly, Counterclaim Defendants' motion to dismiss Count V will be granted**.**

### III.    Count VII (Tortious Interference)

Counterclaimants bring Count VII against all Counterclaim Defendants. They allege that the Counterclaim Defendants knew that the Company had a business relationship and/or a valid expectancy of a business relationship, the False Reviews and Family Letter constitute

9

unjustifiable, intentional, and malicious interference with those relationships, and Counterclaimants were damaged by the loss of business from former, current, and prospective clients.  Doc. [59] ¶¶ 114-21.

Counterclaim Defendants argue that Counterclaimants did not have a valid business expectancy with their "former clients," and that Counterclaimants did not allege that Counterclaim Defendants had knowledge of any relationship between Counterclaimants and their former clients.  Doc. [140] at 5.  Further, Counterclaim Defendants argue that Counterclaimants failed to plead a valid business expectancy with prospective clients because they failed to identify any prospective clients or plead any other facts that raise a right to relief above the speculative level.  *Id.* at 5-6.

Under Missouri law, the elements of tortious interference with a contract or business expectancy are (1) a contract or valid business expectancy, (2) the defendant's knowledge of the contract or relationship, (3) an intentional interference by the defendant inducing or causing a breach of the contract or relationship, (4) absence of justification, and (5) damages.  *Smith v. MasterCard Int'l*, No. 4:16-CV-1866-CDP, 2017 WL 103966, at *3 (E.D. Mo. Jan. 10, 2017), *aff'd*, No. 17-1245, 2017 WL 3401312 (8th Cir. July 3, 2017) (*citing Serv. Vending Co. v. Wal–Mart Stores*, 93 S.W.3d 764, 769 (Mo. Ct. App. 2002)).  The claims relating to former and prospective clients are analytically distinct, so the Court will consider them separately.[2]

### A. Former Clients

Counterclaim Defendants argue that Counterclaimants did not have a valid business expectancy with their "former clients" because they were, by definition, no longer clients.  They

---

[2] Counterclaim Defendants do not dispute the pleading's sufficiency with respect to the final three elements of tortious interference, so only the first two factors are discussed.

10

add that Counterclaimants did not allege that Counterclaim Defendants had knowledge of any relationship between Counterclaimants and their former clients. Doc. [140] at 5.

First, as Counterclaimants explain in their Response, the word "former" is used to refer to clients who left the Company because of the Counterclaim Defendants' actions; in other words, Counterclaimants allege that, at the time of Counterclaim Defendants' actions, those clients were *current* clients. Doc. [148] at 6. Counterclaimants therefore had valid contracts and/or valid expectancies that their clients would continue being clients. Thus, Counterclaimants satisfy the first element of tortious interference with respect to the former clients.

Second, while Counterclaim Defendants claim not to know of any relationship between Counterclaimants and their former clients, Counterclaimants allege that most members of the Hoffmann Family are customers of the Company. Doc. [59] ¶ 39. Counterclaimants further allege that members of the Hoffmann Family, including Tom's brother Michael, and "numerous long-time Hoffmann family friends" ceased business with Tom and the Company after receipt of the Family Letter. *Id.* ¶ 46. In Count VII itself, Counterclaimants allege that "Counterclaim Defendants knew the Company had a business relationship and/or valid expectancy of a business relationship with customers to provide services." *Id.* at 114. Construed in the light most favorable to Counterclaimants, it is plausible that Counterclaim Defendants were aware that their family members and longtime friends did business with Counterclaimants. That level of plausibility is enough at the motion to dismiss stage. Accordingly, Counterclaimants have pled that Counterclaim Defendants tortiously interfered with Counterclaimant's contracts with the recipients of the Family Letter.

### B. Prospective Clients

With respect to prospective clients, Counterclaim Defendants argue that Counterclaimants do not identify any "prospective clients" or plead any other facts that "raise a right to relief beyond the speculative level." Doc. [140] at 5-6.

For a party to have a reasonable business expectancy, there must be a probable future business relationship from which it anticipates receiving financial benefits. *John Beal, Inc. v. Roofpros, Inc.*, No. 4:16-cv-1151-CDP, 2016 WL 7439214, at *3 (E.D. Mo. Dec. 27, 2016). "The hope of establishing a business relationship through prospective dealings with customers with whom there has been no course of prior dealings does not constitute a reasonable business expectancy." *Id.* at *3 (citing *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 565 (Mo. Ct. App. 1999)).

Counterclaimants argue that "online reviews are a primary source of information that prospective customers review." Doc. [148] at 7. While that may be true, it is not legally enough to create a reasonable business expectancy. Counterclaimants are speaking about "prospective dealings with customers with whom there has been no course of prior dealings," *Sloan* at 565, which does not suffice.

Counterclaimants also argue that much of their business "comes from Tom's family or referrals therefrom," and it is "therefore reasonable that he should expect business from other members of his family or from referrals, and that there be a reasonable chance that such business would develop." Doc. [148] at 7. Like people reading reviews online, these second- and third-degree connections to whom Counterclaimants may have potentially and counterfactually been referred constitute prospective, unknown, potential customers with whom Counterclaimants have had no prior business relationship.

12

Accordingly, Counterclaim Defendants' motion to dismiss Count VII will be denied with respect to the effect the Family Letter had on family members and affiliated entities who were clients at that time; the motion will be granted in all other respects.

### C. Count VIII (Civil Conspiracy)

Counterclaimants bring Count VIII against all Counterclaim Defendants. They allege that Counterclaim Defendants conspired with various third parties to participate in the exercise of Fraudulent Clicks and/or to post the False Reviews and participate in Fraudulent Clicks. Doc. [59] ¶ 125.

Counterclaim Defendants argue that Counterclaimants have not stated a claim for civil conspiracy because there is no underlying cause of action for false light invasion of privacy, and "[c]ivil conspiracy is not itself actionable in the absence of an underlying wrongful act or tort." *Higgins v. Ferrari*, 474 S.W.3d 630, 643 (Mo. App. 2015) (*quoting Hamilton v. Spencer*, 929 S.W.2d 762, 767 (Mo. App. 1996)). Counterclaim Defendants further argue that Counterclaimants' conspiracy claim cannot be based on the Company conspiring with its own agents, since "[a]n agent cannot conspire with his principal." Doc. [140] at 6-7 (*citing Dunne v. Res. Converting, LLC*, No. 4:16-CV-1351-DVN, 2017 WL 2264807, at *10 (E.D. Mo. May 24, 2017)).

Counterclaim Defendants misinterpret Counterclaimants' argument. The basis of the conspiracy claim is the exercise of the Fraudulent Clicks and the posting of the False Reviews. Counterclaimants allege the Fraudulent Clicks as part of the basis of its fraud claim and allege the False Reviews as part of its defamation claim. While the Court agrees with Counterclaim Defendants that Counterclaimants have failed to state a claim for false light invasion of privacy, Counterclaimants have pled defamation and fraud, both of which are wrongful acts. This means

13

that there is an underlying wrongful act supporting the conspiracy claim, and Counterclaim Defendants' argument fails on this point.

Further, Counterclaim Defendants' agency argument is without merit. Counterclaimants allege that Matt Moore, Grant Pope, Justin Cole, Jake Pelikan, and Riley O'Neill "posted disparaging, defamatory and misleading ratings and reviews on Google." Doc. [59] ¶ 35. Counterclaimants do not allege that those individuals are Counterclaim Defendants' agents, so the agency argument fails.

Counterclaim Defendants' motion to dismiss Count VIII will be denied.

## Conclusion

Accordingly, Counterclaim Defendants' Motion to Dismiss (Doc. [139]) is **GRANTED** with respect to Counts IV and V, **GRANTED IN PART** and **DENIED IN PART** with respect to Count VII, and **DENIED** with respect to Count VIII.

Counterclaim Defendants shall file an Answer to the remaining Counterclaims (Doc. [59]) by no later than October 1, 2020.

An appropriate judgment shall accompany this Memorandum and Order.

Dated this 17th day of September, 2020.

*Sarah E. Pitlyk*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE