UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HOFFMANN BROTHERS HEATING AND AIR CONDITIONING, INC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-00200-SEP |
| | ) | |
| HOFFMANN AIR CONDITIONING AND HEATING, LLC, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | |
| HOFFMANN BROTHERS HEATING AND AIR CONDITIONING, INC., ROBERT J. HOFFMANN, CHRIS HOFFMANN, AND ROBERT JOSEPH HOFFMANN, JR. | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Counterclaim Defendants Chris Hoffmann, Robert J. Hoffmann, Robert J. Hoffmann, Jr., and Hoffmann Brothers Heating and Air Conditioning, Inc.'s, Amended Motion for Continued Sealing.  Doc. [359].  For the reasons set forth below, the Motion is granted in part and denied in part.

### BACKGROUND

Throughout this litigation, the parties have sought to seal a significant number of documents and filings from the public docket.  At issue in the instant Motion are several documents which were submitted with and/or relied upon in the parties' briefing of their respective motions for summary judgment and the Court's Order disposing of those motions.  *See* Docs. [191], [249], [254], [314].  In its March 6, 2022, Memorandum and Order, the Court declined to decide, at that juncture, whether all the documents that the parties' requested to seal met the requirements for sealing pursuant to Local Rule 13.05.  Instead, the Court provisionally

sealed those documents for which sealing was sought that were cited in the Court's Order and instructed the parties to file a motion to continue sealing, together with a memorandum in support thereof, in compliance with the local rules, within 14 days. Doc. [314] at 40; *see* E.D. Mo. L.R. 13.05.

On March 21, 2022, Counterclaim Defendants filed a Motion for Leave to File Under Seal, Doc. [330], along with a sealed Memorandum in Support, Doc. [331]. Counterclaimants opposed that Motion. Doc. [350]. The Court considered the Motion at its Status Hearing on April 13, 2022. At that hearing, and in its Order that followed, Doc. [358], the Court informed Counterclaim Defendants that their Motion did not appear to satisfy the requirements of Local Rule 13.05. The Court advised the parties that Rule 13.05, which was recently amended and took effect June 1, 2021, emphasizes the right of the public to access court materials and requires the Court to carefully consider the public and private interests affected by the sealing of judicial records. Recognizing the relatively short period of time that amended Rule 13.05 has been in place, and that this litigation commenced well before the amendment, the Court gave Counterclaim Defendants additional time to provide supplemental briefing in support of their request for continued sealing.

In that supplemental briefing, styled as an Amended Motion for Continued Sealing, Doc. [359], Counterclaim Defendants request that 11 documents remain sealed.[1] The documents for which they request sealing fall into three categories: (1) the Settlement Agreement and documents containing excerpts of the Agreement; (2) documents containing "sensitive business information," including information related to Hoffmann Brothers' revenue, marketing strategy, and budget; and (3) documents containing non-party personal information. *Id.* at 1-2.

## LEGAL STANDARD

"There is a common-law right of access to judicial records" but the right is not absolute. *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citing *Nixon v. Warner Commc'ns, Inc.*, 453 U.S. 589, 597-98 (1978)). "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings,

---

[1] Counterclaim Defendants' first request to seal documents after the Court's March 6, 2022, Memorandum and Order, sought to seal eight additional documents: Docs. [256-19], [278-5], [278-7], [278-9], [278-10], [278-11], [278-20], and [291-5]. *See* Doc. [330]. Counterclaim Defendants withdrew their request to seal those documents in their amended Motion. Doc. [359] at 2.

and 'to keep a watchful eye on the workings of public agencies . . . .'" *Id.* at 1222. Courts must decide whether there are "sufficient grounds to override the common-law right of access to justify" sealing judicial records. *Id.* at 1223. "The decision whether to seal a judicial record is left to the sound discretion of the trial court 'in light of the relevant facts and circumstances of the particular case.'" *Wishah v. City of Country Club Hills*, 2021 WL 3860328, at *2 (E.D. Mo. Aug. 30, 2021) (quoting *Nixon*, 435 U.S. at 599). In making that decision, the Court "consider[s] the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance the interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT Corp.*, 709 F.3d at 1223 (citing *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990)). The presumption in favor of public access to judicial records may only "be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) (citing *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006)); *see also* E.D. Mo. L.R. 13.05(A)(4)(b)(i) (the movant bears the burden of demonstrating with "specific legal and factual" support that sealing is appropriate).

DISCUSSION

## I. Documents Containing Non-Party Personal Information

Counterclaim Defendants seek to seal portions of Docs. [251-3] and [278-20], which both contain non-party personal information, including individuals' personal addresses. As the Court discussed with the parties at the April 13, 2022, Status Conference, pursuant to Local Rule 2.17, non-party personal information, including personal addresses, should be redacted from public filings. *See* E.D. Mo. L.R. 2.17 ("[P]arties shall refrain from including, or shall partially redact where inclusion is necessary . . . [t]he home address of a non-party[.]"). The Court has reviewed Counterclaim Defendants' redacted filings, Docs. [359-9], [359-10], and, finding that they redact only the personal information of the non-parties,[2] will permit the filing of the redacted copies on the public docket in place of the currently sealed documents, Docs. [251-3] and [278-20].

---

[2] A large majority of the customers discussed in Docs. [251-3] and [278-20] are identified by their home addresses, which should clearly be redacted pursuant to Local Rule 2.17. Two individuals, however, are identified by their personal telephone numbers, rather than their home addresses. Although Rule 2.17 does not expressly state that personal telephone numbers must be redacted, the public has no legitimate interest in accessing such private identifying information of non-parties; as such, the Court will permit the redaction of those phone numbers as well.

## II.     **The 2011 Settlement Agreement**

Counterclaim Defendants request that the Court seal portions of the 2011 Settlement Agreement, Docs. [194-1] and [251-2], as well as portions of filings containing excerpts of the Agreement, Docs. [194] and [251].  The redacted versions of these documents can be found on the public docket at Docs. [193], [359-1], [359-2], and [359-3].

Counterclaim Defendants advance several arguments for sealing certain provisions of the Settlement Agreement.  First, they note that, on June 18, 2019, Chief Judge Sippel "recognized that [the] confidential settlement agreement should be sealed . . . ."  Doc. [360] at 3 (citing Doc. [73]).  The Court notes, however, that Chief Judge Sippel's Order was entered at a much earlier phase of the case, before it was apparent whether the Settlement Agreement would become the basis for any of this Court's decisions; it did not explicitly address arguments for and against sealing; and it was entered several years before the amendment to Local Rule 13.05, which took effect in June 2021.  Rule 13.05, as amended, more emphatically "recogniz[es] and emphasiz[es] the public's right of access to most court documents" than its predecessor.  *Mason v. D&D Pizza*, 2022 WL 1471343, at *1 (E.D. Mo. May 10, 2022).  For all of those reasons, it would be inappropriate for the Court to base the current sealing decision on that preliminary one.

Counterclaim Defendants contend that sealing the Settlement Agreement "is consistent with this Court's practice," even under the requirements of the amended rule.  Doc. [360] at 3.  Specifically, they cite to *Long v. Gyrus ACMI, Inc.*, 2021 WL 1985054, at *2 (E.D. Mo. May 18, 2021), in which this Court sealed a wrongful death settlement agreement.  In that case, the Court weighed "the substantial benefit" associated with sealing of the settlement agreement against the "harm of sealing the documents from public view," and found that the balance of interests favored allowing the agreement to remain under seal.  *Id.*  Specifically, the Court considered the public interest in encouraging settlements, and noted that the agreement "would not have been achieved if the parties had believed that the terms would become public."  *Id.*  It also noted that the agreement "contain[ed] financial information that [the plaintiffs had] a significant interest in keeping private."  *Id.*  While *Long* is relevant to the extent that it reflects this Court's decision to seal the terms of a settlement agreement, the Court does not find it particularly instructive here.  The settlement agreement at issue in *Long* was a wrongful death settlement, which was filed with the Court for the purpose of gaining the Court's approval of the settlement pursuant to Missouri law.  *See* Mo. Rev. Stat. § 537.080 (requiring parties to present proposed wrongful death

settlement agreements to the Court for approval). In that context, the Court determined that the public's interest in ascertaining the exact terms of the settlement was low and did not outweigh the public interest in facilitating settlement negotiations. *See Long*, 2021 WL 1985054, at *2.

More generally, Counterclaim Defendants are correct that the undersigned and other judges in this district have approved the sealing of certain settlement agreements. *See, e.g.*, *id.*; *Egan v. Kirksville Mo. Hospital Co., LLC*, 2021 WL 6134381, at *2 (E.D. Mo. Dec. 29, 2021); *Ezell v. Acosta, Inc.*, 2019 WL 8160704, at *4 (E.D. Mo. Apr. 4, 2019); *Williams v. BPV Mkt. Place Inv.*, 2014 WL 5017934, at *2 (E.D. Mo. Oct. 7, 2014). But the Court rejects Counterclaim Defendants' suggestion that such cases represent a broader principle that *all* settlement agreements filed with the Court warrant sealing from the public. Indeed, judges in this district have also denied the sealing of settlement agreements and notices of settlements. *See, e.g.*, *Mason*, 2022 WL 1471343, at *2 (parties did not adequately justify their request to file settlement documents under seal); *Wishah*, 2021 WL 3860328, at *4 (declining to seal the existence of a notice of settlement where the parties did not articulate justifications for keeping it confidential).

Rather than drawing categorical lines, this Court and the Eighth Circuit have made clear that, in every case, the Court must "consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT Corp.*, 709 F.3d at 1223 (citing *Webster Groves Sch. Dist.*, 898 F.2d at 1376). Counterclaim Defendants argue that that balance favors sealing because the Settlement Agreement contained a confidentiality clause; therefore, the parties reasonably believed that the terms of the Agreement would never be made public. Doc. [360] at 3. If they had known that the terms would be made public, Counterclaim Defendants contend, that "would have affected the terms of the ultimate Agreement entered into, and they may not have been inclined to settle the dispute outside of the court system in the first place." *Id.* Based on that argument, Counterclaim Defendants urge that "the balance of public and private interests favors sealing" the Agreement. *Id.*

The mere fact that the Settlement Agreement was designated as confidential or contained a confidentiality provision does not on its own satisfy the standard for sealing of such an agreement once it becomes a court record. *See* E.D. Mo. L.R. 13.05(A)(3) (the parties'

designation of a document as confidential "is relevant to, but not dispositive of, whether [the document] will be sealed when filed with the Court"); *Mason*, 2022 WL 1471343, at *2 (rejecting the parties' argument that a settlement agreement should be sealed because the agreement itself required confidentiality). Still, as it did in *Long*, the Court recognizes that the risk that the terms of a settlement agreement may become part of a public court docket could hinder mediation and settlement negotiations. *See Long*, 2021 WL 1985054, at *2. That concern carries less weight, however, in a case such as this one, where the parties did not negotiate the settlement agreement with the certain prospect of filing it with a court. Here, the Settlement Agreement is on this Court's docket only because the parties seeking sealing brought a lawsuit in which they are asking the Court to interpret and apply the Agreement's terms.

The fact that the parties' claims require the Court to interpret the Settlement Agreement increases the public's legitimate interest in access to the terms of the Agreement. One of the most important questions of this litigation has been, and continues to be, the proper interpretation of the Settlement Agreement's provisions and how its terms impact the parties' other legal claims. As discussed above, the public's ability to access judicial records "bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings . . . ." *IDT Corp.*, 709 F.3d at 1222. If the Court indulged Counterclaim Defendants' request to seal substantial portions of the Settlement Agreement, the public would be unable to "evaluate the reasonableness and fairness" of significant aspects of the Court's analysis of the parties' arguments. *Id.* In *IDT Corporation v. eBay*, the Eighth Circuit found it persuasive, in considering the district court's sealing of a complaint, that the complaint "played only a negligible role in the performance of [the district court's] Article III duties," and that "the court never adjudicated any aspect of the claims on the merits[.]" *Id.* at 1224 (cleaned up). Here, by contrast, Counterclaim Defendants' proposed redactions include some of the very provisions that the Court interpreted in its recent summary judgment order (e.g., the provisions of the Agreement pertaining to the protection of the trade name, the payments made to Counterclaimant Thomas Hoffman (Tom) in exchange for his common stock of the company, Tom's retention of company property, the parties' dismissal of claims and mutual releases, and the reimbursement of personal charges Tom made on company accounts).

The public's interest is not limited to only those provisions explicitly examined in the Court's order, either. In fact, one of the Counterclaim Defendants, Hoffman Brothers, has itself

6

urged the Court in its previous filings to read the Settlement Agreement "as a whole."  Doc. [192] at 6 ("The Agreement as a whole reflects the parties' intent to omit Hoffmann Brothers from the defined set of 'Parties' and the obligations imposed by the non-disparagement clause."). In its Order ruling on the parties' summary judgment motions, the Court agreed with that principle.  Doc. [314] (quoting *ATC Co., Inc. v. Myatt*, 389 S.W.3d 732, 735 (Mo. Ct. App. 2013)) (noting that the test to determine whether a contract is ambiguous "is whether, in the context of the *entire agreement*, the disputed language is reasonably susceptible of more than one construction . . .") (emphasis added).  Moreover, the Court notes that Counterclaim Defendants have not made any arguments for sealing specific provisions, in the event that sealing of others is denied.  *See Flynt*, 885 F.3d at 511 (movant must provide "compelling reasons" for sealing); E.D. Mo. L.R. 13.05(A)(4)(b)(i) (movant must provide "specific legal and factual reasons justifying the sealing").  Their arguments for sealing pertain only to the Agreement as a whole, and those arguments do not meet their burden to justify sealing.  On the arguments before it, then, the Court concludes that Counterclaim Defendants' interest in maintaining the confidentiality of the terms of the Settlement Agreement generally is outweighed by the public's right of access to the record on which the Court bases its decisions.  *See Wishah*, 2021 WL 3860328, at *3 (citing *IDT Corp.*, 709 F.3d at 1222).

The Court recognizes, however, that the Settlement Agreement also contains private financial information that played no role in the parties' arguments or the Court's analysis.  The public has little interest in obtaining such information.  *See Long*, 2021 WL 1985054, at *2 (noting that the public's interest in obtaining private financial information is weaker than its interest in accessing the terms of a settlement); *Mason*, 2022 WL 1471343, at *1 (implying that keeping "the settlement amount and distribution of proceeds" sealed may be justified, but sealing of "the entire document" under those circumstances is not); *see also Hartman v. New Madrid Cnty. R-1 Sch. Dist.*, 2021 WL 296830, at *3 (E.D. Mo. Jan. 28, 2021) (requiring the filing of a settlement agreement on the public docket but permitting the parties to redact certain private information).

Accordingly, the Court will allow Counterclaim Defendants to redact the following information from the publicly docketed version of the Settlement Agreement:  (1) the amount paid to Tom in exchange for his shares of common stock, as reflected in Section 1 of the Agreement; (2) the amount paid to Tom in exchange for the protection of the trade name, as

reflected in Section 3 of the Agreement; (3) the amount paid to Tom in consideration for the non-solicitation agreement, as reflected in Section 4 of the Agreement; (4) the amount discussed with respect to Tom's payroll payments, as reflected in Section 6 of the Agreement; (5) the amounts discussed with respect to the two life insurance policies, as reflected in Section 7 of the Agreement under the life insurance policy; (6) the amount of income Tom was required to report, as reflected in Section 13 of the Agreement; (7) the amount paid monthly for the building lease, as reflected in Section 14 of the Agreement; (8) the fair market value of the Company property retained by Tom, as reflected in Section 15 of the Agreement; and (9) the amount the Company reimbursed Tom for personal expenses incurred on company accounts, as reflected in Section 16 of the Agreement.  *See IDT Corp.*, 709 F.3d at 1224 (quoting *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995)) (it is appropriate "for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document").  Only the specified amounts (i.e., the numerical figures) should be redacted from the public docket and not any of the terms associated with those amounts.

Counterclaim Defendants shall file public copies of the Agreement (Docs. [194-1] and [251-2]) and the documents containing provisions of the Agreement (Docs. [194] and [251]), redacted pursuant to this Order, on the docket within seven (7) days of this Memorandum and Order.

## III.   Documents Containing Sensitive Business Information

Finally, Counterclaim Defendants seek to continue sealing "certain documents contain[ing] sensitive marketing and proprietary information[.]"  Doc. [360] at 2.  Specifically, Counterclaim Defendants submit redacted versions of Docs. [212] (Counterclaim Defendants' Reply in Support of Plaintiff's Motion to Amend Case Management Order), [212-4] (2019 deposition of Angela Caputa), [212-5] (emails between Jane Tayon and Tom), [251-6] (Deposition of Chris Hoffmann), and [291-6] (2021 deposition of Angela Caputa).  *See* Docs. [359-4], [359-5], [359-6], [359-7], [359-8].

After careful review of the sealed documents and the redacted versions of those documents, the Court agrees with Counterclaim Defendants that the documents contain private financial and strategic information, which the public has little legitimate interest in accessing.  *See* Doc. [361] at 4-5.  Again, it is the Court's responsibility to balance the common-law right of access and the parties' interests in confidentiality of the information.  *IDT Corp.*, 709 F.3d at

1223.  The redacted documents listed above contain private information relating to, among other things:  Hoffmann Brothers' 2020 revenue and marketing budget; specific marketing and advertising strategies employed by Hoffmann Brothers and Angela Caputa, Hoffmann Brothers' marketing director, including discussions of their pay-per-click campaigns and search engine optimization methods; and private emails between Tom Hoffmann and Jane Tayon, which mention the strategic information discussed by Caputa in her deposition testimony.  *See* Docs. [359-4], [359-5], [359-6], [359-7], [359-8].  As Counterclaim Defendants point out, "the public's interest in the contents of those [types of private] documents is significantly weaker than it is in the terms of [a] settlement."  *Long*, 2021 WL 1985054, at *2; *see also IDT Corp.*, 709 F.3d at 1224 (affirming the district court's decision to seal certain "confidential and competitively sensitive business information"); *Eagan*, 2021 WL 6134381, at *2 (noting that parties have a legitimate interest in keeping private financial information confidential).  Moreover, the Court accepts Counterclaim Defendants' argument that, in addition to the general interest in keeping financial and business information private, they have a legitimate interest in preventing competitors from obtaining information about Hoffmann Brothers' business strategies.  Doc. [360] at 5; *see In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 2020 WL 4035548, at *2 (D. Minn. July 27, 2020) ("Unsealing documents containing confidential business operations communications would provide competitors with insight into how [the company makes] business decisions, which would give competitors the ability to make strategic decisions to negative impact [the company's] market share.").  The public does not have a significant interest, for example, in learning the company's yearly revenue or marketing budget or the advertising techniques it employs to optimize its online presence.  On the other hand, Counterclaim Defendants have articulated a legitimate concern that it could be detrimental to their business if competitors were to use this otherwise-confidential information to "market against" them.  Doc. [359-6] at 2.

The Court finds that Counterclaim Defendants have provided sufficient justification for sealing the redacted portions of Docs. [212], [212-4], [212-5], [251-6], and [291-6].  *See Flynt*, 885 F.3d at 511; *Wishah*, 2021 WL 3860328, at *2.  Weighing the public's minimal interest in obtaining such information against Counterclaim Defendants' interest in keeping confidential business information out of the hands of their competitors, the balance of interests favors permitting the proposed redactions.  *See* Docs. [359-4], [359-5], [359-6], [359-7], and [359-8].

9

CONCLUSION

For the reasons discussed herein, Counterclaim Defendants' redacted filings related to the non-party witnesses' personal addresses and telephone numbers (Docs. [359-9], [359-10]) and those containing Hoffmann Brothers' sensitive business information (Docs. [359-4], [359-5], [359-6], [359-7], [359-8]) will remain on the public docket in their redacted form. Counterclaim Defendants have not met the standard for sealing the Settlement Agreement generally, but they may file redacted versions of the Agreement and the documents related thereto, consistent with the instructions in Part II of this Memorandum & Order. *See supra* at 6-7.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Chris Hoffmann, Robert J. Hoffmann, Robert J. Hoffmann, Jr., and Hoffmann Brothers Hearing and Air Conditioning, Inc.'s, Amended Motion for Continued Sealing, Doc. [359], is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Docs. [359-9] and [359-10] shall be filed on the public docket, and Docs. [251-3] and [278-20] shall remain unsealed indefinitely.

**IT IS FURTHER OREDERED** that Counterclaim Defendants shall submit redacted versions of Docs. [194-1], [251-2], [194], and [251], consistent with the Court's instructions in Part II of this Memorandum and Order within seven (7) days.

**IT IS FURTHER ORDERED** that Docs. [359-4], [359-5], [359-6], [359-7], and [359-8] shall be filed on the public docket, and Docs. [212], [212-4], [212-5], [251-6], and [291-6] shall remain sealed indefinitely.

**IT IS FINALLY ORDERED** that Counterclaim Defendants' previous Motions for Leave to File Under Seal, Docs. [286] and [330], are **DENIED as moot.**

Dated this 27th day of May, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE