## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| HOFFMANN BROTHERS HEATING AND AIR CONDITIONING, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| HOFFMANN AIR CONDITIONING AND HEATING, LLC,  et al., | ) ) ) |
| Defendants, | ) ) |
| v. | ) ) |
| HOFFMANN BROTHERS HEATING AND AIR CONDITIONING, INC., ROBERT J. HOFFMANN, CHRIS HOFFMANN, AND ROBERT JOSEPH HOFFMANN, JR. | ) ) ) ) ) ) |
| Counterclaim Defendants. | ) |

Case No. 4:19-cv-00200-SEP

## MEMORANDUM AND ORDER

Before the Court are Defendants/Counterclaimants Thomas E. Hoffmann and Hoffmann Air Conditioning & Heating, LLC's Motion for Attorneys' Fees, Doc. [489], and Counter Defendant Robert J. Hoffmann's Motion for Attorneys' Fees, Doc. [491].  The motions have been fully briefed.  For the reasons set forth below, both motions are denied.

### BACKGROUND

This matter comes before the Court after more than a decade of contention and litigation among the parties.  The procedural history of this case is set forth at length in the prior opinions of this Court issued at summary judgment and post-trial, which are incorporated by reference. *See* Docs. [314], [362], [530].  The Court will not repeat that lengthy history except to the extent relevant to the competing motions for attorneys' fees now before it.

In 1988, Defendant Thomas E. Hoffmann (Tom), and his older brother, Counterclaim Defendant Robert J. Hoffmann (Robert), purchased what would eventually become Hoffmann Brothers Heating and Air Conditioning, Inc. ("Hoffmann Brothers").  Doc. [252] at 2.  In 2010,

Robert made plans to buy Tom out of the family business, Doc. [278] ¶ 1 *SEALED*, and a lawsuit between the brothers ensued in the Circuit Court of St. Louis County. *See* Doc. [285] ¶ 2. On July 14, 2011, the parties entered into a Settlement Agreement. *Id*. The 2011 Settlement Agreement included, among other things, a non-disparagement clause, non-solicitation agreements, and a provision that provided for Tom to receive a payment in exchange for his agreement to not use the "Hoffmann" name in connection with an HVAC business for the four years following the settlement. *See* Doc. [251-2] *SEALED* (Copy of the 2011 Settlement Agreement).

After executing the Settlement Agreement, Tom created a new HVAC company, and in the summer of 2017, began using the business name "Hoffmann Air Conditioning & Heating" and operating the website hoffmannairconditioning.com. *See* Doc. [59] ¶ 23. On February 8, 2019, Plaintiff Hoffmann Brothers filed this suit against Tom and Hoffmann Air Conditioning & Heating, bringing various claims relating to trademark and copyright infringement, cyberpiracy, and breach of contract. *See* Docs. [1], [55]. Defendants filed counterclaims against Plaintiff Hoffmann Brothers as well as Robert J. Hoffmann, Robert J. Hoffmann, Jr., and Chris Hoffmann. Doc. [59].

At summary judgment, Defendants prevailed on the merits of Plaintiff's claims for copyright infringement, as the Court found that while Defendants admitted using images of Hoffmann Brothers employees taken from Plaintiff's advertisements to promote Hoffmann AC, Plaintiff failed to demonstrate a causal nexus between Defendants' use of the photos and Defendants' profits. *See* Docs. [314], [362]. Plaintiff prevailed on Count II of Defendants' counterclaim for breach of contract, and Counterclaim Defendants prevailed on Defendants' counterclaims for defamation and tortious interference. *Id*. The parties proceeded to trial on Plaintiff's remaining trademark-related claims, the breach of contract claims, and Defendants' claim for prima facie tort against Joe Hoffmann.[1]

On June 17, 2022, after an eight-day trial, the jury found in favor of Defendants on Plaintiff's primary claims of trademark infringement and unfair competition. *See* Doc. [460]. The jury also found in favor of Defendants on their counterclaim of prima facie tort against

---

[1] Tom also sought a declaratory judgment that Defendants' actions had not violated Plaintiff's statutory or common law trademark rights, which claim was rendered moot by the jury's verdict in Tom's favor on Plaintiff's trademark claims. *See* Docs. [59], [460].

Counterclaim Defendant Joe Hoffmann, awarding $800 in actual damages and $5,000 in punitive damages. *Id.* The jury found in favor of Tom on Hoffmann Brothers' claim that Tom breached the 2011 Settlement Agreement by using the name "Hoffmann" in an HVAC business name between 2011 and 2015, and it found in favor of Hoffmann Brothers on its claim that Tom had breached the 2011 Settlement Agreement by failing to return or destroy all Hoffmann Brothers materials in his possession. The jury awarded Hoffmann Brothers nominal damages of $1 for the breach. *See* Doc. [460]. Finally, the jury found in favor of Counterclaim Defendant Robert on Tom's claim that Robert had breached the non-disparagement clause of the 2011 Settlement Agreement. *Id.*

Defendants maintain that, because they prevailed on Plaintiff's copyright, trademark infringement, and unfair competition claims, they are entitled to attorneys' fees pursuant to Section 505 of the Copyright Act, 17 U.S.C. § 505, and Section 1117(a) of the Lanham Act, 15 U.S.C. § 1117(a). Doc. [489]. Meanwhile, Robert Hoffmann asserts that he is entitled to attorneys' fees pursuant to the fee-shifting clause in the 2011 Settlement Agreement. Doc. [491].

## Legal Standards

In a copyright action, a district court "in its discretion may . . . award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. "[A] district court may not award attorney's fees as a matter of course," but instead must make a case-by-case assessment. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)). Regardless of whether the prevailing party is a plaintiff or a defendant, a court should treat the prevailing party the same, as "defendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* In deciding whether to make an award, a court has to "giv[e] substantial weight to the reasonableness of [the losing party's] litigating position [and] . . . tak[e] into account all other relevant factors," *Designworks Homes, Inc. v. Thomson Sailors Homes, L.L.C.*, 9 F.4th 961, 964 (8th Cir. 2021) (quoting *Kirtsaeng,* 579 U.S. at 210), such as "whether the lawsuit was frivolous or unreasonable, the losing litigant's motivations, the need in a particular case to compensate or deter, and the purposes[2] of the Copyright Act," *Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 911 (8th Cir. 2015) (citing

---

[2] The "primary objective" of the Copyright Act is "[t]o promote the Progress of Science and useful Arts." *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 526 (1994); U.S. Const., Art. I, § 8, cl. 8.

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). "There is no precise rule or formula for making these determinations"; rather, "equitable discretion should be exercised in light of the considerations [that have been] identified." *Fogerty*, 510 U.S. at 534.

The Lanham Act permits courts to award attorney fees to "the prevailing party" in "exceptional" cases. 15 U.S.C. § 1117(a). An "exceptional" case stands out from others with respect to "(1) the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or (2) the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (applying similar language to the patent statutes); *Safeway Transit LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1182 (8th Cir. 2020) (applying the *Octane Fitness* analysis to Lanham Act claims); *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 346 (8th Cir. 2018). District courts determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Octane Fitness*, 572 U.S. at 554. The factors a court may consider include, but are not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at n.6 (citations omitted). A case that presents "either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases" to warrant a fee award. *Octane Fitness*, 572 U.S. at 555. But there is no requirement that a case be "groundless, unreasonable, vexatious or pursued in bad faith" in order to be "exceptional." *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 912 F.3d 445, 454 (8th Cir. 2018).

## DISCUSSION

## I.    Defendants are not entitled to attorneys' fees on Plaintiff's copyright claims.

Defendants claim to be entitled to fees and costs under the Copyright Act due to the Court's grant of summary judgment in their favor on Plaintiffs' copyright infringement claim. Doc. [489] at 5. Defendants assert that such fees are "routinely" awarded to prevailing copyright litigants, and that all relevant factors militate in favor of the Court exercising its discretion to grant them here. *Id.* They cite several grounds for finding that Plaintiff's claim for copyright infringement was factually and legally unreasonable from the outset, for example: Plaintiff failed to register the photographs with the Copyright Office until the eve of litigation, even though the photographs had been taken years before; the photos are mere stock photographs

4

showing two men in Hoffmann Brothers uniforms working on HVAC equipment; and while Defendants admit that the photos were used in connection with advertising their business, they claim it was without Defendants' knowledge or consent, as they were posted on their website by a third-party advertising agency that found the photos on the internet. *Id.* at 2, 6-7. Moreover, Defendants contend, they used the photographs only briefly, ceased use of the photos before this litigation commenced, and never sold the photos or otherwise profited from their use *Id.* at 7-8. Defendants believe that context shows that Plaintiff's copyrights claim was brought for the improper purpose of imposing unwarranted litigation costs on Defendants. *Id.* They assert that Plaintiff "must be deterred" from bringing such baseless copyright claims, and that they should be compensated for their fees to further such deterrence. *Id.* at 8-9.

Plaintiff denies that the copyright claim was either legally or factually unreasonable, and notes to the contrary the undisputed facts that the photos were subject to a valid copyright owned by Plaintiff and that Defendants used the photos without permission. Doc. [516] at 11. Plaintiff notes that, contrary to Defendants claim that the photos were used without their "knowledge or consent," Nick Hoffmann, Tom's son, admitted that he approved of the photos being posted. *Id.* Plaintiff argues that its copyright claim was brought not to multiply fees but rather to vindicate the undisputed illegal use of its photos. *Id.* Plaintiff also argues that its damages claim, while ultimately found wanting by this Court, was not unreasonable, and courts have long recognized that solid proof of financial harm caused by an infringer is difficult to prove or quantify. *Id.* at 13. Plaintiff also argues that an award of fees is not necessary to deter frivolous claims, as Plaintiff does not have a history of filing numerous or unreasonably aggressive copyright suits. *Id.* Finally, Plaintiff rejects Defendants' argument that attorneys' fees are "routinely awarded" to prevailing parties under the Copyright Act, noting that the Eighth Circuit has repeatedly held that such fees should not be awarded as a matter of course. *Id.* at 14.

After considering the overall reasonableness of Plaintiff's litigating position and taking into account the relevant factors under *Kirtsaeng*, 579 U.S. at 210, the Court finds that this is not a case in which an award of attorneys' fees is justified under the Copyright Act. As an initial matter, Defendants' claim to be "entitled" to attorneys' fees because such fees are "routinely" awarded to prevailing parties in copyright cases is mistaken. Doc. [489] at 5-6. In fact, the Eighth Circuit has cautioned district courts not to award such fees "routinely" or as "the rule rather than the exception." *Designworks Homes, Inc. v. Thomson Sailors Homes, L.L.C.*, 9 F.4th

961, 965 (8th Cir. 2021) ("district court was wrong to say that attorney fees are the rule rather than the exception and should be awarded routinely in cases like this one") (quotation marks omitted). A district court has "broad discretion" in deciding whether to fee-shift, and it must give "substantial weight to the reasonableness" of Plaintiff's litigating position, "but also tak[e] into account all other relevant factors, *Kirtsaeng*, 579 U.S. at 210, such as "whether the lawsuit was frivolous . . . , the losing litigant's motivations, the need in a particular case to compensate or deter, and the purpose of the Copyright Act," *Designworks Homes, Inc*., 9 F.4th at 964.

Plaintiff's copyright claim was not unreasonable. Unlike other copyright cases in the Eighth Circuit where fees were awarded, there is no question here that the copyrighted photos at issue were owned by Plaintiff and Defendants used them to advertise their HVAC business. *See Designworks Homes*, 9 F.4th at 964-65 (approving award of fees where plaintiff pursued its claims despite "significant objective differences" between its work and defendant's designs). Additionally, Plaintiff's registration of its copyright just before bringing suit has no legal significance or bearing on whether the Court should award fees to Defendants. *See Vivid Sites, LLC v. Millsap*, 2017 WL 1187636, at *6 (Mar. 29, 2017 E.D. Mo.) (court rejected argument that it should award prevailing defendant fees because plaintiff did not register its copyright until after initiating lawsuit, noting that the Copyright Office allowed plaintiff to register its code during the proceeding and the delay in registration did not weigh in favor of fee-shifting). And Defendants provide no account of how a delay in registration impacts the Court's exercise of its equitable discretion under § 505. Defendants' claim that the photos were used without their knowledge or consent also does not render Plaintiff's copyright claim unreasonable, as courts have long held that "innocent" infringement is nonetheless infringement under § 505. *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 829 (8th Cir. 1992) ("The defendant's intent is simply not relevant: The defendant is liable even for innocent or accidental infringements.").

Considering the objectively reasonable factual and legal bases for Plaintiff's copyright claim, the Court does not agree with Defendants that Plaintiff's decision to sue was frivolous or attributable to improper motives. *See Mary Ellen Enters. v. Camex, Inc*., 68 F.3d 1065, 1072 (8th Cir. 1995) (While "[b]ad faith or willfulness are not prerequisites to an award of attorneys' fees, they are factors that may guide the courts' discretion."). Although the Court ruled against Plaintiff on the issue of damages, the fact that Defendant prevailed does not make Plaintiff's claim objectively unreasonable. The parties devoted significant briefing to the copyright claim at

6

the summary judgment stage, and the Court carefully analyzed the parties' arguments and evidence before ultimately concluding that a reasonable jury could not rule in Plaintiff's favor. That result was hardly an obvious or foregone conclusion.

"[O]bjective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted [because] the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. West Publishing Co.*, 240 F.3d 116, 121–22 (2d Cir. 2001). The Supreme Court has instructed that district courts, when deciding whether to award fees, must be "faithful to the purposes of the Copyright Act[,]" *Fogerty*, 510 U.S. at 535 n.19, which include "'to promote the Progress of Science and useful Arts,'" *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 349 (1991) (quoting U.S. Const., Art. I, § 8, cl. 8). Section 505 furthers the purpose of the Copyright Act by encouraging the litigation of meritorious copyright claims and defenses. *See Fogerty*, 510 U.S. at 517 ("[b]ecause copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible"). The purposes of the Copyright Act would not be served by applying its fee-shifting provision so liberally as to deter litigants with objectively reasonable claims from bringing suit.

Finally, the Court agrees with Plaintiff that an award of fees is not necessary in this particular case to deter frivolous claims, as Plaintiff has not made a practice of filing unreasonable or improper copyright suits. *See Designworks Homes, Inc.*, 9 F.4th at 964 (The Court, in deciding whether to fee-shift, must also "tak[e] into account all other relevant factors, such as "the need in a particular case to . . . deter . . . ."). Therefore, Defendants' request for fees under the Copyright Act is denied.

## II.     Defendants are not entitled to attorneys' fees on Plaintiff's trademark claims.

Defendants also maintain that they are entitled to attorneys' fees under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). Plaintiff brought multiple trademark-related claims, including claims for cyberpiracy, unfair competition, and trademark infringement, and Defendants ultimately prevailed on all claims. At the summary judgment stage, Plaintiff voluntarily withdrew its cyberpiracy claim, and at trial the jury found for Defendants on the unfair competition and trademark infringement claims. Accordingly, Defendants argue that the

Court should award them attorneys' fees as the prevailing party.  The Lanham Act, like the Copyright Act, allows a court to award reasonable attorneys' fees to the prevailing party.  The standard for granting attorneys' fees to a prevailing defendant in a trademark case differs considerably from that applicable to a copyright case, however, as the Lanham Act requires that the case be an "exceptional" one in order to justify fee-shifting.  15 U.S.C. § 1117(a) (In "exceptional cases," a district court "may award reasonable attorney fees to the prevailing party.).

According to Plaintiff, in order for a case to be considered "exceptional," a plaintiff must have "brought an action that was groundless, unreasonable, vexatious, or was pursued in bad faith."  Doc. [516] at 6-7 (citing *B&B Hardware, Inc. v. Hargis Indus., Inc.,* 912 F.3d 445, 454 (8th Cir. 2018)).  But according to the Eighth Circuit, "'an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Pocket Plus, LLC v. Pike Brands, LLC*, 53 F.4th 425, 435 (8th Cir. 2022) (quoting *Octane Fitness*, 572 U.S. at 554); *see also Sturgis Motorcycle Rally, Inc.*, 908 F.3d at 346 (evaluating whether a case was "exceptional" with respect to either the substantive strength of a litigating position or the unreasonable manner in which the case was litigated); *Safeway Transit*, 954 F.3d at 1182–83 (same); *SnugglyCat, Inc. v. Opfer Commc'ns, Inc.*, 953 F.3d 522, 527 (8th Cir. 2020) (same).  So, while "[r]elevant factors for a district court to consider include 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence,'" *Pocket Plus, LLC*, 53 F.4th at 435, it is not *necessary*, as Plaintiffs argue, that a lawsuit be "groundless, unreasonable, vexatious, or . . . pursued in bad faith" in order to be "exceptional."  Still, in order to justify fee-shifting, the case must be outside the typical "mine-run cases."  *Octane Fitness*, 572 U.S. at 555.  It is the "*rare*" case that warrants an award of attorneys' fees.  *Safeway Transit*, 954 F.3d at 1182.

Defendants argue that this case is exceptional due to the weakness of Plaintiff's litigating positions.  Doc. [489] at 10.  First, Defendants assert that Plaintiff had no evidence to support its cyberpiracy claim, which alleged that Plaintiff used multiple URLs containing the term "hoffman" to divert customers from plaintiff's website to Tom's primary business website.  *Id*.; Doc. [516] at 8-9.  Defendants claim that Tom believed he had the right to use his last name in

connection with an HVAC business, and he was not trying to confuse and divert customers away from Plaintiff. Doc. [489] at 10.  And Defendants contend that Plaintiff effectively conceded that it had no evidence to the contrary when it withdrew the claim at summary judgment.  *Id*.

Plaintiff counters that Defendants' conduct fit within the contours of a typical cyberpiracy claim, and it was reasonable for it to assert that Defendants were attempting to profit by diverting consumers through the use of confusingly similar domain names. Doc. [516] at 8-9. Plaintiff claims to have withdrawn the claim in order to narrow the issues for trial, not because it had no evidence or believed the claim unfounded, and maintains it should not be punished for having done so.  *Id*. at 10.  The Court agrees that the cyberpiracy claim was not so clearly groundless or unreasonable as to be "exceptional" for purposes of the Lanham Act.  And the Court would be loath to discourage parties from sensibly allocating their resources by penalizing them for withdrawing claims even when those claims were not groundless or unreasonable.

With respect to Plaintiff's unfair competition and trademark infringement claims, Defendants argue that Plaintiff knew those claims were entirely baseless and objectively unreasonable from the outset. Doc. [489] at 11.  According to Defendants, the 2011 Settlement Agreement clearly gave Tom the right to use his name in connection with an HVAC company after four years had passed, and Plaintiff understood that interpretation of the Settlement Agreement to be correct.  *Id*.  "Consistent with the parties' understanding of the 2011 Agreement, Thomas Hoffmann complied with its terms—waiting until 2017 to change his HVAC business name to Hoffmann Air Conditioning & Heating," but despite Tom's compliance and Plaintiff's consent, Plaintiff unreasonably determined to sue Defendants for unfair competition and trademark infringement.  *Id*.  And then, Defendants argue, Plaintiff compounded the unreasonableness of its decision to bring suit by aggressively pursuing its claims in bad faith for over three years, only to have the jury find in Defendants' favor.  *Id*. at 12.

The Court, being well-acquainted with the terms of the 2011 Settlement Agreement, cannot agree with Defendants' characterization of the strength or reasonableness of Plaintiff's trademark claims.  Defendants have consistently charged throughout this litigation that the Settlement Agreement granted Tom the right to use the name "Hoffmann" in connection with HVAC services after the four-year limitation period in the Settlement Agreement had passed, and that Plaintiff consented to Defendants' allegedly infringing use.  Meanwhile, Plaintiff has maintained that the Settlement Agreement had no bearing on how trademark protections might

9

apply to Tom's use of the "Hoffmann" name in the future, and thus, the Agreement did not allow
him to use the name in an infringing manner.  And this Court has, on multiple occasions, found
that the 2011 Agreement was unclear on this point and could reasonably be interpreted to support
either position.  *See* Docs. [314] at 22, [362] at 22, [530] at 18 ("The Court concluded long ago
that the trade name clause in the Settlement Agreement was ambiguous as a matter of law.").
Additionally, as Plaintiff points out, the district judge assigned to this matter before the
undersigned told the parties that he believed the 2011 Settlement Agreement did not sanction
Defendants' conduct.  *See* Doc. [92] at 2.  While that was only a preliminary statement of his
general sense of the strength of the parties' positions, it supports the objective reasonableness of
Plaintiff's claims.  The fact that the jury ultimately concluded that Plaintiff should not prevail
does not place this case so far outside the "mine-run" of cases as to render it one of the "rare"
and "exceptional" cases in which an attorneys' fees award would be justified.  Plaintiff's claims
were not so weak as to "stand[ ] out from others," nor were they litigated in an "unreasonable
manner," and accordingly, fee-shifting under the Lanham Act is not warranted.  *Pocket Plus,
LLC*, 53 F.4th at 435.

### III.    Robert is not entitled to attorneys' fees under the 2011 Settlement Agreement.

Robert maintains that he is entitled to his attorneys' fees and costs as the prevailing party
on Tom's breach of contract counterclaim.  Doc. [491] at 1.  The 2011 Settlement Agreement,
states in relevant part:

> ***Prevailing Party Attorney's Fees***.  If any Party files any legal action under or
> arising out of, or to enforce, this Agreement, the prevailing Party shall be
> entitled to recover its reasonable attorney's fees, costs, and expenses.

*Id*.; *see also* Doc. [251-2]  at 9.  Both Robert and Tom are "Parties" as that term is defined in the
Agreement, and Tom filed an action against Robert for breaching the non-disparagement clause
of the Agreement on which Robert prevailed at trial.  Therefore, Robert believes he is entitled to
fees under the quoted clause.  Doc. [491] at 1; [492] at 4-5.  He claims to have incurred
$1,784,149.24 in costs and attorneys' fees related solely to Tom's breach of contract
counterclaim.  *Id*. at 2.  This amount appears to include approximately 65% of all of the fees
billed by attorneys for Plaintiff and Counterclaim Defendants in this matter since its inception,[3]

---

[3] Robert is seeking $1,575,321.07 out of $2,420,520.98 in total fees billed in the matter.  Doc. [508-1] at
379.

including approximately 75% of all fees billed for trial preparation.  Robert acknowledges that he is not entitled to recover fees for work done on other claims in the case, such as Plaintiff's claims for trademark infringement and unfair competition.  Doc. [524] at 9.  Nevertheless, he claims that it is appropriate to impute the bulk of all fees to this single breach of contract counterclaim, arguing that "the majority of the time" spent on trial preparation "is time that would have been spent even if the breach of contract counterclaim against Robert was the only claim being tried in the case." *Id*. at 20.  He also seeks to recover fees for 50% of all time billed during the trial itself, arguing that "there was no simple way to divide the time between prosecution of Hoffmann Brothers' claims and defense of Tom's counterclaim," and that 50% is a "very fair, reasonable request" and "if anything, is under-, not over-reaching." *Id*. at 20-21.

Having presided over this matter for several years, including the eight-day trial, the undersigned finds these arguments astonishing.  Based on the 500+ docket entries in this matter, it is readily apparent that the breach of contract counterclaim against Robert consumed a relatively small fraction of the parties' time and attention throughout the litigation.  The trademark claims consumed the lion's share of the parties' motion practice and trial.  *See* Doc. [530] at 40 ("Plaintiff's trademark claims were the gravamen of this lengthy litigation.").  Had there been a lawsuit limited to the counterclaim on which Robert prevailed, the trial of that case (in the unlikely event that it went to trial) would have taken a fraction of the time that was expended by counsel in this matter.  Moreover, the elements of the counterclaim do not appreciably overlap with the elements of any of the other claims that were litigated at trial, and the parties are privy to a detailed trial transcript.  Therefore, it beggars belief that the same attorneys who produced a 396-page post-trial motion with briefing and exhibits, Docs. [492], [492-1], [492-2], [508-1], and spent 159 pages dissecting opposing counsel's billing statements, Docs. [514], [516], [516-1-6], could not possibly have analyzed more precisely what proportion of their own work during trial was spent on presenting evidence and argument relating to the breach of contract counterclaim.  The claim that 50% is the best approximation these attorneys could provide of the time they spent on the counterclaim during trial is as incredible as the suggestion that it may be an underestimate.

Fortunately, the Court need not do the work to reduce Robert's fee request to something more reasonable, because none of the fees claimed are actually compensable under the 2011 Settlement Agreement.  As Tom correctly points out, because Robert is a Party to the

Agreement, not Hoffmann Brothers,[4] only Robert can seek an award of his fees under the fee-shifting provision. *See* Doc. [512] at 5-7. Tom argues that the attorneys' fees at issue here were incurred by Hoffmann Brothers, not Robert, and because Robert has incurred no attorneys' fees, he is not entitled to recover any amount. *Id*. The Court agrees.

Under Missouri law, where the language of a contract is clear and unambiguous, the Court must enforce the contract as written. *See Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010). The Settlement Agreement could have been drafted to state that a prevailing Party would be entitled to recover attorney fees that were incurred as a result of or in connection with any lawsuit brought to enforce a provision of the Agreement, in which case it would not matter who incurred the fees. But that is not what the Settlement Agreement states. Rather, the Agreement clearly specifies *by whom* the fees must be incurred, stating that a prevailing Party is "entitled to recover *its* reasonable attorney's fees." Doc. [491] at 1 (emphasis added). So, pursuant to the plain language of the Agreement, Robert may only recover his own fees, costs, and expenses.

"The party seeking attorney fees bears the burden of establishing entitlement to the award of fees and of documenting the hours and hourly rates, as well as showing that its request is reasonable." *Orduno v. Pietrzak*, 932 F.3d 710, 719-20 (8th Cir. 2019). Here, Robert has not met that burden. The evidence of record in this matter indicates that Hoffmann Brothers, not Robert, incurred and paid the expenses that Robert claims in his motion. For example, exhibits of invoices are addressed to Hoffmann Brothers,[5] and nothing on file shows any invoice addressed to Robert. Additionally, Robert submitted a declaration from one of his attorneys, Mark Thomas, in which Mr. Thomas states that Robert would be responsible for the fees if

---

[4] This precise issue has been thoroughly litigated during this matter, and the Court has found that Hoffmann Brothers is not a "Party" as that is word is defined in the Settlement Agreement. *See* Doc. [314] at 15 ("[T]he Court finds that the Agreement unambiguously defines 'Parties' as Robert, Mary, Trust, Tom, and Ron," and "excludes Hoffmann Brothers.").

[5]



| | Invoice Number | 20210417P |
| **IMS** LITIGATION INSIGHTS | Invoice Date | December 08, 2021 |
| | Project | 51541-01-FG |
| | Description | Hoffmann Brothers v Hoffman AC- FG |
| | Page | Page 1 of 1 |

Bill To:
Chris Hoffmann
Hoffman Brothers Heating and Air Conditioning, Inc.
1025 Hanley Industrial
Brentwood, MO 63144

Please send payments via ACH Deposit
Wells Fargo
ABA ▮▮▮
Operating Account ▮▮▮

or Remit To:
IMS Consulting & Expert Services, LLC
P.O.Box 208312
Dallas, TX 75320-8312
Tel: 913-339-9885 Fax: 913-339-9311

Hoffmann Brothers did not pay. *See* Doc. [524-2] at 4. Notably, he does not attest that the bills have not been paid by Hoffmann Brothers, that Robert is now responsible for paying them, or that Robert has actually paid anything. The contractual provision at issue here limits recovery to fees and expenses incurred by Robert himself, and the Court has no evidence that Robert has personally incurred any fees or costs in this matter. He is therefore not entitled to recover any amount under the Agreement's fee-shifting provision. *See S.E.C. v. Comserv Corp.*, 908 F.2d 1407, 1414 (8th Cir. 1990) (Where the prevailing party's attorneys' fees were actually paid by his employer, the court held that the prevailing party's defense costs had not been incurred by him for purposes of the fee-shifting arrangement.); *United States v. 122.00 Acres of Land*, 856 F.2d 56, 58 (8th Cir. 1988) (Attorneys' fees had not been incurred, and thus the fee-shifting provision did not apply, where there was no obligation on the claimant to pay them.); *Deitz v. U. of Denver, Colorado Seminary*, 2011 WL 2559829, at *4 (D. Colo. June 28, 2011) (The Court, interpreting the fee-shifting clause of a contract, noted that "incur" does not mean the same as "pay," and where the prevailing party did not personally pay any costs or expenses, he was not entitled to recover under the attorneys' fees provision of the contract).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Thomas E. Hoffmann and Hoffmann Air Conditioning & Heating, LLC's Motion for Attorney Fees, Doc. [489], is **DENIED**.

**IT IS FURTHER ORDERED** that Counter Defendant Robert J. Hoffmann's Motion for Attorney Fees, Doc. [491], is **DENIED**.

Dated this 12th day of January, 2024.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE